HANLON, JUDGE:
*165 Elmo Greer & Sons, Inc., hereinafter referred to as “Greer”, brought this action against the Division of Highways, hereinafter referred to as “respondent”, for delay damages resulting from the failure of an adjacent contractor, Green Construction Company, Inc., hereinafter referred to as “Green”, to comply with its contractual obligation in the construction of its portion of an “overlap” of the two projects. Both contractors were to construct sections of Interstate 64 east of Glade Creek in Raleigh County. Greer entered into a contract with respondent for the construction of Project No. 64-4(71)123 on May 22, 1984. This contract involved major excavation and fill work, and the construction of a local service route bridge. Green had a contract with respondent to construct the adjacent project, Project No. X-341-64-123, C-2. Greer’s contract provided for a scheduled completion date of June 30, 1986, and Greer completed the project on schedule.
As a part of Greer’s contract, Greer was required to complete a major fill between situations 534+50 and 545+00. This landfill work could not begin until the adjacent contractor, Green, had installed a box culvert and special embankment work at the bottom elevations of the same cut. The projects overlapped at these stations. The Greer project was a very nearly “balanced project”, meaning that the volume of material excavated on the project was equivalent to the amount necessary for the fills and only unsuitable material would be wasted. Since there was major rock excavation for Greer to complete and Greer could not begin the major fill portion of the project, Greer’s performance was greatly impacted by the unavailability of the major cut. Greer was to place approximately 1,580,000 cubic yards of material in the fill over the box culvert and select embankment placed by Green.
Green’s contract provided that a portion of its work be performed at the same stations. Green was to place a box culvert and special embankment at the lower elevations of the fill. This work was to be completed by October 31, 1984. The contracts for both parties (Greer and Green), provided that the contractors were to cooperate and coordinate with each other’s work in order that each contractor would be able to complete its respective contract on schedule.
On July 5, 1984, an agreement between Greer and Green was submitted to respondent to comply with the cooperation and coordination provision of their contracts. Greer had agreed to a 30-day extension of the deadline for Green to complete its work, the new deadline being December 1, 1984. In November 1984, it was apparent to both contractors and respondent that Green would not meet its December 1, 1984, deadline, and Greer notified respondent by letter that the delay would significantly alter its completion and progress of its project. Thereafter, meetings were conducted on a monthly basis, and at each meeting respondent urged Greer to be prepared to begin its work on the fill as Green would be completing the box culvert and select embankment. Green finally completed its work in August 1985. In an attempt to cooperate with Green and with the respondent, Greer performed much of the embankment work as Green completed its work; therefore, Greer did not have full use of the fill area but did its work
piecemeal. Greer cooperated and even performed a portion of Green’s contractual obligation by placing embankment in the cut.
*166 Greer provided official notice to respondent on January 23, 1985, that it intended to file a claim for the delay of its work on this project. The claim period begins with this January date. Greer alleges damages as a result of the delay in the amount of $3,211,602.59. The basis for the calculation of its damages is §109.4 of the Standard Specifications. The damages include labor, materials, and idle equipment costs. The total cost of the project was $10,272,644.64 and Greer was paid the sum of $7,061,042.05 for a difference of $3,211,602.59 which represents the amount claimed herein. Respondent contends that Greer is not entitled to recover for delay damages as Greer did not comply with the provisions of the Standard Specifications of Roads and Bridges §105.7 Cooperation Between Contractors, which states as follows:
The Department reserves the right at any time to contract for and perform other or additional work on or near the work covered by the Contract.
When separate Contracts are let within the limits of any one project, each contractor shall conduct his work so as not to interfere with or hinder the progress or completion of the work being performed by other Contractors. Contractors working on the same project shall cooperate with each other as directed.
When separate Contracts are let within the limits of any one project, each contractor shall conduct his work so as not to interfere with or hinder the progress of completion of the work being performed by other Contractors. Contractors working on the same project shall cooperate with each other as directed.
Each contractor involved shall assume all liability, financial or otherwise, in connection with his Contract and shall protect and save harmless the Department from any and all damages, or claims that may arise because of inconvenience, delay, or loss experienced by him because of the presence and operations of other contractors working within the limits of the same project.
The Contractor shall arrange his work and shall place and dispose of the materials being used so as not to interfere with the operations of the other contractors within the limits of the same project. He shall join his work with that of the others in an acceptable manner and shall perform it in the proper sequence to that of the others.
In the event the Engineer finds that further coordination effort is necessary, he shall call a meeting of the contractors involved. After the meeting has been held, he may notify the Contractors of the action required of each and his decision shall be final.
*167 Respondent also contends that Greer should have been successful in litigation which it brought directly against Green in federal court. The case against Green was dismissed by the Federal District Circuit Court whereupon Greer appealed to the U.S. Circuit Court of Appeals, which appeal was denied on September 10, 1991. As to the damage issue, respondent argues that there was no extra work performed by Greer, and therefore, §109.4 of the Standard Specifications should not be the basis for calculating the damages which were allegedly the result of the delay on the project. Respondent contends that Greer’s damages should be limited to idle equipment costs as calculated by the respondent in the amount of $228,209.76.
As a result of the failure of Green to provide the completed fill to Greer in a timely manner, Greer encountered problems with the handling of common material and sand rock from areas on the project which required major excavation. Greer had to double handle material which would not have occurred if Greer had not been delayed on the fill at the major cut. Greer also was delayed in its construction of a small bridge as a portion of the fill had to be completed to provide sufficient area for the construction of the bridge. When Greer was able to begin its work in the major cut area, it performed the work in stages and therefore extra equipment was needed and Greer had much less space in which to perform its work. The delay also forced Greer to work material during the winter months that was unsuitable at that time of the year which necessitated the use of extra equipment. In spite of all these problems, Greer worked diligently to complete the project on schedule.
The evidence in this claim supports Greer’s allegations that Green’s delay in completing its work at the bottom of the overlap area delayed Greer causing an increase in its costs. Greer has established to the satisfaction of the Court that it cooperated to the best of its ability with Green. The Court also finds that Greer complied with §105.7 of the Specifications. It may be the responsibility of Green to “protect and save harmless the Department from any and all damages or claims that may arise because of inconvenience, delay, or loss experienced” as a result of its actions on its project. This is within the realm of possibilities for respondent to consider.
This Court is not impressed with respondent’s contention that Greer’s lack of success against Green in the suit brought by Greer in the Federal District Court was avoidable. It is much easier to use hindsight than foresight when reviewing actions brought by other parties. The Federal District Court and Circuit Court of Appeals appear to have dismissed Greer’s action against Green on the theory that Greer did not establish its standing as a third party beneficiary as provided in West Virginia law. To suggest that amended pleadings may have overcome the issue of detrimental reliance is, at best, pure speculation. Greer did not have priority of contract with Green, but respondent certainly has. Respondent has a suit currently pending against Green in the Circuit Court of Kanawha County and it is anticipated that respondent will pursue this action once this Court has rendered its opinion in the instant claim.
As to the issue of damages incurred by Greer, the Court is of the opinion that the damages are limited to those directly and proximately cause by the delay rather than based upon *168 the provisions in §109.4 of the Specifications. The Court agrees with respondent that the delayed work was included in the original contractual agreement. Greer was delayed in its performance of the contract, but the work was not changed in scope or manner. The Court, however, limits Greer to recover of its overtime labor required to perform its contract, to idle equipment costs incurred during the delay period including the crane, and the additional B & O taxes and performance bond expenses. The overtime labor costs for December 1, 1984, through June, 1986 incurred by Greer were in the amount of $401,521.27 with the additional costs for Health and Welfare and Pension being $41,537.38. A 40% overhead allowance of $177,223,46 is allowed for a total amount of $620,282.11.
The calculation of idle equipment costs is always speculative as the issue arises as to whether additional equipment was really necessary on any project. The Court is satisfied with the amount that respondent has calculated for idle equipment which is the amount of $228,209.76; therefore, the Court will adopt this figure as a part of its award to Greer. The Court will also include the cost for the crane maintained on the project for construction of the bridge. The crane remained idle during a portion of the delay. The cost to Greer was $42,825.00.
Therefore, the Court makes an award to Greer in the sum of $891,316.87 for the delay.
The Court must next consider the issue of interest. The legal action brought against Green was litigated by Greer and Green for approximately three and one-half years from July 5, 1988, to December 10, 1991. It was not until the conclusion of this litigation that the action in the Court of Claims was placed upon its calendar for hearing. The Court is of the opinion that interest shall be included for this period of time. Therefore, interest based upon the provisions in W. Va. Code §14-3-1 is awarded from the 151st day after July 2, 1986, which is November 29, 1986, to the date of issue of this opinion on December 11, 1992.
Accordingly, the Court makes an award to Greer in the amount of $891,316.87 plus interest in the amount of $322,771.81 for a total award of $1,214,088.68.
Award of $1,214,088.68.